```
                              UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF FLORIDA
                              CASE NO. 10-Cv-61279-COHN
                                     (09-Cr-60107-COHN)
                              MAGISTRATE JUDGE P. A. WHITE

DOUGLAS L. GRANSTON,       :

        Movant,            :

v.                         :         REPORT OF
                                     MAGISTRATE JUDGE
UNITED STATES OF AMERICA,  :

        Respondent.        :
_____
```

## I. Introduction

This matter is before this Court on Douglas Granston's motion to vacate pursuant to 28 U.S.C. §2255, attacking his conviction and sentence, entered following a guilty verdict in case no. 09-Cr-60107-COHN.

The Court has reviewed the motion, amended motion, and memorandum in support of the amended motion (Cv DE# 1, 6, 7); the government's response (Cv DE# 12), the Presentence Investigation Report (PSI); and all pertinent portions of the underlying criminal file.

Construing the arguments liberally as afforded pro se litigants pursuant to Haines v. Kerner, 404 U.S. 419 (1972), the movant asserts

> **Claim 1**: Ineffective assistance of counsel for forcing him to enter an involuntary guilty plea.
>
> **Claim 2**: Ineffective assistance of counsel for failing to object to the charging document which prejudiced him by including multiple, separate charges in one information.

**Claim 3**: Ineffective assistance of counsel for failing to object to unjustified sentence enhancements and double jeopardy violations at sentencing.

## II.  Facts and Procedural History

The government charged Granston by information[1] with fifteen counts of bank robbery in violation of 18 U.S.C. §2113(a) (counts 1-3, 5-14, 16-17) and two counts of carrying/using a firearm during a crime of violence in violation of 18 U.S.C. §924(c)(1)(A) (counts 4, 15). (Cr DE# 13).

Granston entered a written plea agreement under which he agreed to enter a guilty plea as all counts.  (Cr DE# 20). Granston entered his plea on the record during a May 8, 2009 change of plea hearing.  (Cv DE# 12-3).

Granston and the government entered a stipulated factual proffer in connection with Granston's guilty plea.  (Cr DE# 21). Granston, his lawyer, and the prosecutor all signed the proffer. (Id. at 12).    According to the proffer, on fifteen separate occasions between June 6, 2008 and February 6, 2009, Granston entered a bank, approached a teller, and demanded that the teller turn over the available money or be shot. (Id. ¶1-15).  The teller complied and Granston exited the bank and fled on foot with the money.  (Id.).   He collected a total of $85,000 from these robberies.  (Id.). During some robberies, he brandished a firearm, during others, he gave the teller a demand note and gestured at his waistband. (Id.).  Digital surveillance photographs were taken at each robbery and turned over to the FBI.  (Id.).  His arm tattoos were visible in some photographs.  (Id.).  During one robbery, his

---

[1] Granston waived prosecution by indictment in writing and in open court. (Cr DE# 17).

face was photographed as he committed the crime without wearing a hat or sunglasses. (Id. ¶10). The news media generated the photographs taken by the victim banks' cameras. (Id. ¶16). This lead to the identification of Granston as the person who had committed some of the fifteen robberies. The teller from a January 16, 2009 robbery picked Granston's photograph out of a photographic line-up. (Id. ¶17). Law enforcement agents arrested Granston on February 13, 2009. (Id. ¶18). Tattoos on Granston's arms matched the tattoos visible in the surveillance photographs. (Id.). Granston was advised of his Miranda rights and knowingly and freely waived his rights and agreed to be interviewed. (Id. ¶19). Granston confessed to committing all fifteen robberies and confessed to possessing a loaded AMT .45 caliber pistol during fourteen of the robberies. (Id.).

Prior to sentencing, a PSI was prepared establishing the initial base offense level for each of the fifteen bank robberies. However, a multiple count adjustment was then done, which resulted in the combined adjusted offense level 33. (PSI ¶¶26-150). Three levels were then deducted, pursuant to U.S.S.G. §3E1.1, based on the movant's timely acceptance of responsibility, resulting in a total offense level of 30. (PSI ¶152-54).

The probation officer next determined that the movant had a total of three criminal history points, resulting in a criminal history category II. (PSI ¶157).

The probation officer next calculated the appropriate sentence as follows: as to counts 1-3, 5-14, 16-17, the term of imprisonment was zero years to twenty years, pursuant to 18 U.S.C. §2113(a); as to count 4, the term of imprisonment was seven years to life, pursuant to 18 U.S.C. §924(c)(1)(A)(ii); and as to count 15, the

3

term of imprisonment was twenty-five years to life, pursuant to 18 U.S.C. §924(c)(1)(A)(ii). (PSI ¶179). Based on a total offense level of 30 and a criminal history category II, the movant's resulting guideline range was 108 to 135 months' imprisonment. (PSI ¶180).

On July 24, 2009, Granston appeared for sentencing. (Cv DE# 12-2). The court sentenced Granston to concurrent sentences of 60 months' imprisonment as to each of the bank robbery counts; 60 months' imprisonment as to count four, consecutive to the bank robbery sentences; and 240 months' imprisonment as to count fifteen, to be served consecutive to all other sentences. (Cr DE# 24, 25). Granston did not appeal.

On August 27, 2010,[2] Granston filed a motion to vacate his sentence pursuant to 28 U.S.C. §2255. (Cv DE# 1). Subsequently, he filed an amended motion and memorandum in support thereof. (Cv DE# 6, 7). The government filed a response, with supporting exhibits attached. (Cv DE# 12).

### III.   Standard of Review

The law is clear that section 2255 authorizes a prisoner to move a sentencing court to vacate, set aside, or correct a sentence where "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." See 28 U.S.C. §2255(a); see also, Hill v. United States, 368 U.S. 424, 426-27 (1962). "A sentence is otherwise subject to collateral attack where there is an error

---

[2] The government concedes that the movant's motion was timely filed.

constituting a 'fundamental defect which inherently results in a complete miscarriage of justice.'" <u>United States v. Jones</u>, 56 F.3d 62 (4 Cir. 1995)(citations omitted).

In order for the movant to prevail on a claim of ineffective assistance of counsel, he must establish that 1) his counsel's representation fell below an objective standard of reasonableness; and 2) but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). The standard is the same for claims of ineffective assistance on appeal. <u>Matire v. Wainwright</u>, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. <u>Id</u>. at 697; <u>Waters v. Thomas</u>, 46 F.3d 1506, 1510 (11 Cir. 1995).

Review of counsel's conduct is to be highly deferential, <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing an attorney's performance is not permitted. <u>White v. Singletary</u>, 972 F.2d 1218, 1220 (11 Cir. 1992) ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); <u>Atkins v. Singletary</u>, 965 F.2d 952, 958 (11 Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." <u>Rogers v. Zant</u>, 13 F.2d 384, 386 (11 Cir. 1994).

## IV.  Discussion

Under **claim 1**, Granston argues ineffective assistance of counsel for forcing him to enter an involuntary guilty plea.

5

Specifically, counsel warned him that he would receive a life sentence automatically if he exercised his right to a jury trial. He also appears to argue that, independent of counsel's performance, the plea was involuntary.

The law is clear that a movant waives his right to contest all nonjurisdictional defects and defenses, when he enters a knowing and voluntary guilty plea to the violation. Where a criminal defendant enters a knowing, voluntary, and intelligent plea of guilty to an offense or offenses, he waives, or more accurately, forfeits all non-jurisdictional defects and defenses. See Smith v. United States, 447 F.2d 487, 488 (5th Cir. 1971), citing, Hayes v. Smith, 447 F.2d 488 (5th Cir. 1971); see also, Wilson v. United States, 962 F.2d 966 (11th Cir. 1992); United States v. Broce, 488 U.S. 563 (1989); United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000), citing, United States v. Smallwood, 920 f.2d 1231, 1240 (5th Cir. 1991). "This includes claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." Id. To enter into a voluntary plea, the defendant must understand the law in relation to the facts. McCarthy v. United States, 394 U.S. 459 (1969).

In this case, review of the record confirms that the movant's plea was knowing and voluntary. To ensure that a plea is voluntary and knowing, Fed.R.Cr.P. 11(b)(1) states that "the court must address the defendant personally in open court before accepting the plea and inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading." Gordon v. United States, 496 F.3d 1270, 1277 (11th Cir. 2007). The rule imposes upon a district court the obligation and responsibility to conduct a searching inquiry into the voluntariness of a defendant's guilty plea. Id. (citations

6

omitted).

Thus, "[a] court accepting a guilty plea must comply with Rule 11 and specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (2005). In Moriarty, the Eleventh Circuit specifically held as follows:

> [t]o ensure compliance with the third core concern, Rule 11(b)(1) provides a list of rights and other relevant matters about which the court is required to inform the defendant prior to accepting a guilty plea, including: the right to plead not guilty (or persist in such a plea) and to be represented by counsel; the possibility of forfeiture; the court's authority to order restitution and its obligation to apply the Guidelines; and the Government's right, in a prosecution for perjury, to use against the defendant any statement that he gives under oath.

Id.

Review of the change of plea proceedings reveals that the court conducted a thorough Rule 11 proceeding. (Cv DE# 12-3, Change of Plea Hearing Transcript). At the outset of the hearing, the court placed Granston under oath.[3] (DE# (Id. at 3). Granston stated that he had a high-school education, had not been treated for mental illness or addiction during the preceding twelve months,

---

[3]The law is clear that "solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988). The subsequent presentation of conclusory allegations, unsupported by specifics, is subject to summary dismissal, as are contentions which in the face of the record are wholly incredible. Machibroda v. United States, 368 U.S. 487 (1962).

had not consumed any drugs, medication, or alcohol in the previous 24 hours, and had never been found incompetent by a court of law. (Id. at 4).  Granston stated that he fully discussed the charges contained in the information with his counsel. (Id. at 5).  He further stated that he was satisfied with counsel's representation and advice. (Id.).  Granston answered in the affirmative when the court asked if he understood the charges and the potential sentences. (Id. at 5-6).  The court went into detail with respect to each count and its respective penalty. (Id.).  Next, the prosecutor explained what the government planned to prove beyond a reasonable doubt at trial. (Id. at 7-9).  Defense counsel stated on the record that he agreed that the elements were correctly stated. (Id. at 9).  When the court asked defense counsel to explain the steps taken to familiarize Granston with the charges, defense counsel stated,

> From the beginning of my representation of Mr. Granston, prior to the government filing their information, I was provided with an extensive amount of discovery, not typically given prior to charges being filed.  Mr. Granston and I reviewed the statements made, photographs, statements made by potential witnesses in the case, and we discussed the pros and cons of proceeding to trial and the elements that the government would need to prove and decided that it was in Mr. Granston's best interest to try to resolve this case without the government going to the grand jury based upon the extensive penalties that he's facing.

(Id.).  The court asked Granston, "Is that your understanding as well?" and Granston replied, "Yes, sir, it is." (Id.).

Next, Granston answered in the affirmative when asked whether his attorney discussed how the federal sentencing guidelines applied in his case.  He stated that he understood that the advisory sentence was determined by the court relying in part on

the PSI, that the court could depart upward or downward from the advisory guideline range, that the sentence could be more or less severe that the sentencing guideline advisory sentence, and that the court was authorized to impose any sentence up to the statutory maximum authorized by law.  (Id. at 10-11).

Turning to the written plea agreement, Granston stated that, before he signed it, he fully discussed the plea agreement with his attorney and he understood the terms and conditions of the agreement.  (Id. at 11).  The court then conducted the following discussion with Granston:

> THE COURT: Were there any promises made to you that are not contained in the written plea agreement?
> THE DEFENDANT: No, sir other than what's stated in there, no sir.
> THE COURT: Okay.  Did you sign the plea agreement?
> THE DEFENDANT: Yes, I did.
> THE COURT: Did anyone force you or coerce you to sign the plea agreement?
> THE DEFENDANT: No, sir.
> THE COURT: Is anyone forcing you to plead guilty to counts 1 through 17 of this information?
> THE DEFENDANT: No, sir.
> THE COURT: Are you entering a guilty plea of your own free will?
> THE DEFENDANT: Yes, sir, I am.

(Id. at 12).

The court next pointed out that under paragraph 8 of the plea agreement, Granston was waiving his right to appeal any sentence imposed.  (Id.).  Granston stated that he discussed the waiver with his counsel before he signed the agreement and that he understood the nature of the wavier.  (Id. at 12-13).  The court then explained the other rights associated with trial that Granston was forfeiting. (Id. at 13-15).  Granston stated that he understood these rights and understood that he was waiving same. (Id.).

Lastly, the court asked whether Granston read, understood, and signed the 12-page stipulated factual proffer. Granston answered in the affirmative and the court incorporated the proffer by reference into the record as part of the plea colloquy. (<u>Id.</u> at 15). Granston expressly entered a guilty plea as to counts 1 through 17 on the record. (<u>Id.</u> at 16). The court made a finding on the record that Granston was fully competent to enter an informed plea and that his plea was knowing and voluntary. (<u>Id.</u>).

On the record before this court, it is evident that the movant understood the facts and the elements of the offense upon which the charges rested. Moreover, by way of entering into the negotiated plea agreement, the movant was telling his lawyer not to conduct any further investigation and not present at a trial proceeding any legal defenses that he may be entitled to as it relates to his case. Under these circumstances, no showing has been made that the plea was anything but knowing and voluntary. Thus, by entering in to a knowing and voluntary plea, the movant waived all nonjurisdiction defects and defenses. Under these circumstances, no showing has been made that counsel was deficient or that the movant suffered prejudice therefrom. <u>See</u> <u>Strickland</u>, <u>supra</u>.

To the extent Granston argues that his conviction was based on a coerced and involuntary confession/plea because counsel threatened that he faced a life sentence if he did not accept the plea, his claim is refuted by the record. The change of plea hearing transcript shows that the movant testified under oath that his counsel investigated the charges, counsel explained the charges and potential sentences to him, and no one had threatened or coerced him into changing his plea. The movant's plea was knowing and voluntary. Consequently, no deficient performance or prejudice has been established and the movant is therefore entitled to no

relief on this claim.

Under **claim 2**, Granston argues ineffective assistance of counsel for failing to object to the charging document which prejudiced him by including multiple, separate charges in one information. Specifically, Granston argues that he should not have been charged in one information with crimes which occurred on separate dates in separate locations.

As a preliminary matter, Granston is contesting a nonjurisdictional defect under this ground. The movant waived his right to contest all nonjurisdictional defects and defenses, when he entered a knowing and voluntary guilty plea. Where a criminal defendant enters a knowing, voluntary, and intelligent plea of guilty to an offense or offenses, he waives, or more accurately, forfeits all non-jurisdictional defects and defenses. See Smith v. United States, 447 F.2d 487, 488 (5th Cir. 1971), citing, Hayes v. Smith, 447 F.2d 488 (5th Cir. 1971); see also, Wilson v. United States, 962 F.2d 966 (11th Cir. 1992); United States v. Broce, 488 U.S. 563 (1989); United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000), citing, United States v. Smallwood, 920 f.2d 1231, 1240 (5th Cir. 1991). "This includes claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." Id. To enter into a voluntary plea, the defendant must understand the law in relation to the facts. McCarthy v. United States, 394 U.S. 459 (1969). In this case, Granston understood the facts and the elements of the offense upon which the charges rested. By way of entering into the negotiated plea agreement, Granston was telling his lawyer not to conduct any further investigation and not present at a trial proceeding any legal defenses that he may be entitled to as it relates to his case. Under these circumstances, no deficient

11

performance or prejudice has been established and Granston is therefore entitled to no relief on the claim.

Turning to the merits, Granston is not entitled to relief. Due process and the Sixth Amendment require that an Indictment state the elements of an offense charged with sufficient clarity to apprise a defendant of the charges against him. United States v. Steele, 178 F.3d 1230, 1234 (11th Cir. 1999); Russell v. United States, 369 U.S. 749, 763-64 (1962). An Indictment is sufficient if it contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defendant and enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." See Hamling v. United States, 418 U.S. 87, 117 (1974)(citations omitted); Government of Virgin Islands v. Moolenaar, 133 F.3d 246 (3 Cir. 1998), citing Russell, supra; Hamling v. United States, supra.

In this case, the government filed a seventeen-count Information after Granston expressly waived his right to prosecution by indictment before the court during an April 23, 2009 hearing and in writing. (Cr DE# 17). Each count of the Information identified the date of the offense, the location of the crime, the dollar amount of money taken, and the statute violated. (Cr DE# 13). Each count also contained the elements of the offense charged. (Id.). With this Information, Granston was sufficiently apprised of the charges against him. Furthermore, during the change of plea hearing, Granston stated in the record that he read, understood, and signed the factual proffer, wherein the facts underlying the charges were explained in detail.

Under these circumstances, no showing has been made that counsel was deficient for failing to challenge the lawfulness of

12

the Information, nor that his plea was anything but knowing and voluntary. Therefore, the movant's knowing and voluntary guilty plea waived all non-jurisdiction defenses. The movant is therefore entitled to no relief on this claim.

Under **claim 3**, Granston alleges ineffective assistance of counsel for failing to object to unjustified sentence enhancements and double jeopardy violations at sentencing.

Granston takes issue with various aspects of the PSI. He first disputes the five-level increase under §2B3.1(b)(2)(C), based on the "alleged" use of a firearm. Throughout the record, Granston expressly conceded that he used firearm during many of the robberies. He first admitted this fact during his post-<u>Miranda</u> statement to the police. He conceded that he used a firearm by signing the stipulated factual proffer and expressly agreeing with the facts contained in the proffer under oath and on the record during the change of plea hearing. Granston cannot now dispute this fact. The court properly accepted the PSI's five-level enhancement under §2B3.1(b)(2)(C). An objection to the increase lacked merit, counsel is not ineffective for failing to raise a meritless claim.

Granston next objects to the manner in which the probation officer grouped the bank robbery counts separately. The PSI explains that "counts 1-3, 5-14, 16, and 17 are separate harms, that require the application of §3D1.4" (PSI ¶25). The probation officer proceeded to properly apply §3D1.4[4] in Granston's case.

---

[4] U.S.S.G. §3D1.4 provides: "Determining the Combined Offense Level. The combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by the amount indicated in the following table:

Number of Units      Increase in Offense Level

(PSI ¶¶26-150). Granston fails to explain the precise problem with the grouping, he does not allege that §3D1.4 itself is improper on its face or that it was erroneously applied. He simply asserts the conclusory statement that the grouping resulted in an improper sentence. In light of the foregoing, any objection to the grouping would have been rejected as meritless. Counsel was not ineffective in failing to raise this claim.

Granston also asserts that his right to be free from double jeopardy was violated because his convictions for counts 1-3, 5-14, 16, and 17 all involved the same criminal offense. The constitutional prohibition against double jeopardy prohibits successive prosecution or punishment for the same offense. The relevant inquiry is whether each offense requires an element not required by the other. <u>United States v. Dixon</u>, 509 U.S. 688 (1993); <u>Blockburger v. United States</u>, 284 U.S. 299 (1932). In this case, Granston was charged with fifteen separate acts of bank robbery, on fifteen separate dates. There was no double jeopardy violation. Counsel was not ineffective for raising this meritless argument at sentencing.

V.   Conclusion

---

```
    1       none
    1 1/2   add 1 level
    2       add 2 levels
    2 1/2 -3   add 3 levels
    3 1/2 -5   add 4 levels
    More than 5   add 5 levels.
```

In determining the number of Units for purposes of this section:

   (a) Count as one Unit the Group with the highest offense level. Count one additional Unit for each Group that is equally serious or from 1 to 4 levels less serious.
   (b) Count as one-half Unit any Group that is 5 to 8 levels less serious than the Group with the highest offense level.
   (c) Disregard any Group that is 9 or more levels less serious than the Group with the highest offense level. Such Groups will not increase the applicable offense level but may provide a reason for sentencing at the higher end of the sentencing range for the applicable offense level."

It is therefore recommended that the motion to vacate entered under 28 U.S.C. §2255 be denied.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 31st day of March, 2011.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Douglas L. Granston
    Reg. No. 77977-004
    FCC - Coleman (Medium)
    Federal Correctional Complex
    Inmate Mail/Parcels
    P.O. Box 1032
    Coleman, FL 33521

    Donald F. Chase , II
    United States Attorney's Office
    500 E Broward Boulevard
    7th Floor
    Fort Lauderdale, FL 33301-3002